# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**CHARLES T. McINTOSH,**

    Petitioner,

    v.                                          CASE NO. 17-3011-JWL

**NICOLE ENGLISH, Warden,
USP-Leavenworth, and (FNU) WILSON,
Unit Manager, USP-Leavenworth,**

    Respondents.

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. At the time of filing, Petitioner was in federal custody at USP-Leavenworth ("USPL"). On March 13, 2017, Petitioner was released from USPL via a furlough transfer to a Residential Reentry Center ("RRC"), and has been housed at Rock Valley Community Programs RRC, located in Janesville, Wisconsin, since March 14, 2017. Petitioner proceeds *pro se* and has paid the filing fee. The Court ordered Respondents to show cause why the writ should not be granted. (Doc. 6.) Respondents filed a Motion to Dismiss (Docs. 11, 12), Petitioner has filed a Response (Doc. 15), and Respondents' time for filing a reply has passed. Petitioner has also filed a Motion to Produce Documents (Doc. 14), and a Supplemental Argument to Motion to Dismiss (Doc. 18). The Court grants the motion to dismiss, denies the motion to produce documents, and dismisses the petition for writ of habeas corpus.

## I. Factual Background[1]

In September 2007, Petitioner was sentenced in the U. S. District Court for the Eastern District of Wisconsin, and is currently serving a 216-month term of incarceration with a ten-year term of supervision for conspiring to distribute a controlled substance in violation of 21 U.S.C. § 841(A)(1), § 841(B)(1)(A), and § 846. (Doc. 12–1, at 2, 9.) Petitioner has a projected release date of June 4, 2017, via good conduct time release. *Id*. at 8.

Petitioner states that upon his arrival at USPL in 2016, he requested placement in an RRC, commonly known as a halfway house, for twelve months under the "amended Second Chance Act."[2] He also alleges that an order from the sentencing court directed the BOP to immediately begin the process for Petitioner's timely release on December 13, 2016. While housed at USPL, Petitioner was reviewed for RRC placement under the provisions of the Second Chance Act of 2007 ("SCA") during Program Reviews conducted in March and September of 2016. (Doc. 12–2, at 2, 6.) Based on his September 2016 review, the Unit Team recommended that approximately 151 to 180 days of pre-release RRC placement was sufficient duration to assist Petitioner with his re-entry needs, including search for employment and reintegration into the community. *Id*. at 6. The Unit Team noted Petitioner had no financial obligations and that, while he abused alcohol and marijuana/hashish prior to incarceration, he completed the 40-hour drug education course and currently had no substance abuse treatment needs. *Id*. Petitioner's

---

[1] The Court reviewed and considered the Petition at Doc. 1 as well as the Petition resubmitted on the Court-approved form at Doc. 3.

[2] Prior to 2008, 18 U.S.C. § 3624(c) limited the time frame during which an inmate was eligible for pre-release custody in an RRC or CCC to the final six months or ten percent of his or her sentence, whichever was less. 18 U.S.C. § 3624(c) (West 2000), *amended by* Second Chance Act of 2007, Pub. L. No. 110–199, § 251, 122 Stat. 657, 692 (2008). This eligibility period was expanded and § 3624(c) now provides in relevant part:
> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).

referral recommendation was contingent upon Petitioner's clear conduct, among other factors. *Id*. Petitioner was approved for RRC placement at Rock Valley Community Programs, located in Janesville, Wisconsin on December 14, 2016, with a furlough transfer to the RRC scheduled for December 13, 2016. *Id*. at 8–9.

On December 11, 2016, two days before Petitioner's scheduled release date, Petitioner's new cellmate assaulted Petitioner. Petitioner was charged with violating Disciplinary Code 201, fighting with another person. *Id*. at 11. Due to the close proximity to his RRC placement date, Petitioner's RRC designation was removed and he was placed in the Special Housing Unit ("SHU") that same day pending investigation of the incident. *Id*. at 3.

The next morning, Petitioner was informed that he would not be released the next day and his phone was turned off. Petitioner was unable to contact his family to let them know he would not be released the next day. On January 4, 2017, Petitioner was found responsible by the DHO for violating Code 201, and sanctioned with the disallowance of twenty-one days good conduct time, and the loss of commissary and email privileges. *Id*. at 15. The DHO informed Petitioner that she had nothing to do with Petitioner's phone being turned off and she did not know why it was off. On January 5, 2017, Respondent Wilson came to Petitioner's cell and informed him that his phone was turned off because Petitioner was fighting. Wilson then stated that he was only placing Petitioner in the halfway house for sixty days.

On January 6, 2017, Petitioner was reconsidered for RRC placement and recommended for a ninety-day placement. *Id*. at 4, 13. This recommendation was approved, and Petitioner reported to the Rock Valley Community Programs RRC on March 14, 2017. *Id*. at 4.

## II. Grounds and Requested Relief

Petitioner alleges that the Bureau of Prisons ("BOP") violated the SCA, as well as Petitioner's due process rights,[3] by adhering to an unconstitutional prison policy, practice or custom by providing him only 150 days[4] at an RRC, and also by not abiding by current law and policy. (Doc. 3, at 6–7.) Petitioner also alleges that BOP staff violated his First Amendment rights and retaliated against him for filing an administrative remedy by cutting off Petitioner's telephone privileges, confining him in the SHU, and taking away his RRC date. *Id*. at 8. Petitioner asks the Court for immediate placement in an RRC, and to reduce his term of supervised release from ten years to five years. *Id*.

## III. Motion to Dismiss

Respondents' motion to dismiss (Docs. 11, 12) alleges that: 1) Nicole English, Warden of USPL, is the only proper Respondent in this habeas corpus action and Respondent Wilson, Unit Manager at USPL, must be dismissed; 2) this action should be dismissed as moot; and 3) this action should be dismissed because Petitioner failed to exhaust his administrative remedies.

## IV. Discussion

### 1. Standard of Review

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3).

---

[3] Petitioner does not appear to be challenging his January 2017 disciplinary proceedings. He does not argue that the DHO proceedings failed to comply with due process or that there was a lack of "some evidence" supporting the DHO's decision.

[4] Petitioner's calculation of 150 days was based on his original release date of December 13, 2016, through May 16, 2017. However, Petitioner was not actually released to the RRC until March 14, 2017. Petitioner now asserts that he will be at the RRC until June 2–4, 2017, which would provide him with approximately 82 days at the RRC. *See* Doc. 15, at 2.

## 2. Exhaustion

Generally, a federal prisoner must exhaust available administrative remedies before commencing a habeas corpus petition under 28 U.S.C. § 2241. *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam). The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542. Under the administrative remedy program for inmates, an inmate is required to first attempt informal resolution of the complaint, and if unsuccessful, he must raise his complaint, with the informal resolution attached, to the Warden of the institution where he is confined. If dissatisfied with that response, he may appeal his complaint to the Regional Director. If the inmate is dissatisfied with the Regional Director's response, the inmate may appeal to the National Inmate Appeals Administrator in the Office of the General Counsel in Washington, D.C. ("Central Office"). Generally, an inmate has not exhausted his remedies until he has sought review and received a final substantive response at all three levels. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (finding that exhaustion requires "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)") (citation omitted). For certain disciplinary actions, involving a decision by the DHO, an inmate may appeal the decision directly to the Regional Director, and by-pass the institution-level procedures. *See* 28 C.F.R. § 542.14(d)(2). If an inmate does not receive a response within the allotted time for reply, including extensions, the inmate may consider the absence of a response to be a denial at that level. *See* 28 C.F.R. § 542.18. To properly exhaust administrative remedies, the petitioner must have presented the same claims in the administrative grievance that appear in the court petition. *Williams v. Wilkinson*, 659 F. App'x 512, 514 (10th Cir. 2016) (citing *Woodford*, 548 U.S. at 94).

On February 12, 2016, USPL received Petitioner's Administrative Remedy ("AR") No. 851679-F1, in which Petitioner sought twelve months of RRC placement. (Doc. 12–1, at 41.) The remedy was rejected that same day due to Petitioner's failure to seek or to provide evidence of an attempt at informal resolution prior to submission. (Doc. 12–1, at 4, 41, 44.) Petitioner did not appeal this rejection or resubmit this remedy following an attempt at informal resolution.

On December 28, 2016, USPL received AP No. 887080-F1, in which Petitioner alleged that his release date had been taken away in retaliation for filing grievances. *Id*. at 42, 47. The Warden issued a response on January 11, 2017, informing Petitioner that his "release was suspended due to the altercation and pending disciplinary proceeding" and "[t]here is no evidence to support [his] allegation staff retaliated against [him] by retarding [his] release date." *Id*. at 46. Petitioner filed an appeal to the North Central Regional Office, which was received on January 23, 2017. *Id*. In his appeal, he alleged that Respondent Wilson retaliated against him for filing remedies by "turning my phone off, having my release date removed on 12/13/16." *Id*. at 50. Petitioner further claimed that Wilson came to his cell on December 12, 2016, "to inform me that he personally removed my release date and that I would not be leaving on my release date," and that "[t]his (CEO) failed to take the proper procedures to take, make sure these grievances of discrimination and retaliation complaints against this Applicant is immediately processed. And is in violation of Applicant's Due Process when they 'Wilson' and 'English, Warden' Failure to adhere to their own policies statements under Arcoren v. Peters, 829 F.2d 671, 676 (8th Cir. 1987)." *Id*. The Regional Director issued her response on February 10, 2017, informing Petitioner that his release was suspended due to the pending disciplinary process. *Id*. at 49. Petitioner did not appeal to the National Inmate Appeals Administrator in Central Office. *Id*. at 5–6, 42–43.

Although exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, a narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion would be futile. *Daybell v. Davis*, 366 F. App'x. 960, 962 (10th Cir. 2010) (unpublished) (citing *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam); *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 235–36 (6th Cir. 2006)). Such exceptions "apply only in 'extraordinary circumstances,' and [petitioner] bears the burden of demonstrating the futility of administrative review." *Lanni v. Hollingsworth*, No. 11-3066-RDR, 2012 WL 523744, at *3 (D. Kan. Feb. 16, 2012) (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)).

Petitioner has not demonstrated that exhaustion would be futile. Petitioner asserts that exhaustion would be futile because "it takes at least 6 to 7 months or more to exhaust" and therefore it could not be completed prior to his original May 16, 2017 release date (Doc. 1, at 2) or prior to his March 14, 2017 transfer date. (Doc. 15, at 2.) He failed to appeal the February 12, 2016 rejection of AR 851679-F1or to resubmit this remedy following an attempt at informal resolution. Likewise, Petitioner did not appeal his retaliation grievance to the Central Office. His argument that he did not have sufficient time to exhaust before his transfer or release date is conclusory. A similar argument was rejected in *Gaines v. Samuels*, where the petitioner argued that requiring full exhaustion would deprive him of time in an RRC. *Gaines v. Samuels*, No. 13-3019-RDR, 2013 WL 591383, at *2 (D. Kan. Feb. 14, 2013) (finding no extraordinary circumstance to warrant waiver of exhaustion requirement). The Court further noted that "[t]he Supreme Court has required that even those inmates who may be entitled to immediate release exhaust their administrative remedies." *Id*. (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973)); *see also Garza v. Davis*, 596 F.3d 1198, (10th Cir. 2010) (dismissing prisoner's petition alleging that BOP was categorically denying review and transfer of eligible inmates to RRCs and

CCCs in violation of statutes and regulations, where prisoner failed to show that exhaustion would be futile). However, even if Petitioner could demonstrate that exhaustion would be futile, his Petition is still subject to dismissal because his claims for relief are either moot or are not properly before the Court in this § 2241 action.

**3. Mootness**

Article III of the United States Constitution empowers federal courts to adjudicate only actual, ongoing cases or controversies. *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988). "To involve the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). "[I]t is not enough that a dispute was very much alive when suit was filed . . . [t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit." *Id*. at 477–78 (citations omitted).

Petitioner's request for relief sought immediate placement in an RRC. Courts have held that "[i]n the context of challenges to the length of a prisoner's placement in a RRC, the relief which may be granted is an order directing the BOP to perform the individualized consideration required by federal law, and not an order directing that the prisoner be placed in a RRC." *Lanni*, 2012 WL 523744, at *4 (citations omitted). The Court in *Kyles v. Chester*, held that petitioner's request for a transfer to an RRC was moot where after the action was filed and while it was pending, the Unit Team responsible for making petitioner's RRC placement decision recommended that he spend 151 to 180 days in an RRC. *Kyles v. Chester*, No. 09-3266-RDR, 2011 WL 855801, at *3 (D. Kan. March 9, 2011) (citations omitted). The court dismissed the petition as moot, finding that petitioner had been granted the relief he sought—namely an

individualized determination concerning his RRC placement—and therefore there was no longer a "live" controversy. *Id.* at *3–4 (noting that "[a]ll that federal inmates like petitioner are entitled to receive is consideration for RRC placement based on an application of the factors set forth in 18 U.S.C. § 3621(b)" and that the court is not authorized to grant petitioner relief in the form of twelve months of RRC placement); *see also Sparks v. Chester*, No. 11-3025-RDR, 2013 WL 1896998, at *1 (D. Kan. May 6, 2013) ("Where a prisoner challenges the period of time he may be allowed placement in an RRC, the appropriate relief is an order directing the BOP to undertake the individualized review required by law.") (citing *Wedelstedt v. Wiley*, 477 F.3d 1160, 1168 (10th Cir. 2007)).

Petitioner has not only received his individualized determination, but he has actually been transferred to the RRC. Petitioner acknowledges that his request for immediate placement in an RRC is now moot, since he is currently housed at the RRC. (Doc. 15, at 3.) However, Petitioner argues that the Court can still provide a remedy by reducing the duration of his supervised release. *Id.* However, this argument does not present a redressable injury sufficient to prevent mootness.

In *Rhodes v. Judiscak*, the Tenth Circuit held that although the petitioner remained subject to a long term of supervised release, the Court could not issue a judgment on his § 2241 petition that would shorten his supervised release term. *Rhodes v. Judiscak*, 676 F.3d 931, 932 (10th Cir. 2012). The Tenth Circuit noted that petitioner's ability to obtain modification under the supervised release statute remained "wholly within the discretion of the sentencing court." *Id.* at 935. The Court found that it could no longer issue a judgment that has a "more-than-speculative chance" of affecting petitioner's rights, and dismissed the petition as moot. *Id.*

**4. Retaliation**

Petitioner claims that the revocation of his phone privileges and change in his release date were done in retaliation for him filing grievances in October of 2016. Petitioner claims that Respondent Wilson took these privileges without due process or disciplinary proceedings, and under Program Statement 5270.09 the only staff member that can sanction Petitioner for fighting is the DHO. Petitioner claims that no other inmates in the SHU had their phone privileges taken away before a UDC or DHO proceeding. To support his retaliation claim, Petitioner filed a Motion for Production of Documents (Doc. 14), seeking "documents of the history of inmates being house[d] in the SHU showing their phones [were] turned on and [were] not disconnected or withheld from use for the past 2 years from 2015 through December 31, 2016, and up to March 13, 2017." Petitioner also requested a copy of his § 2241 Petition, which the Clerk mailed to Petitioner on April 18, 2017.

A petition under 28 U.S.C. § 2241 provides the remedy to challenge the execution of a sentence. *Brace v. United States*, 634 F.3d 1167, 1169 (10th Cir. 2011). Thus, a petitioner may challenge the fact or duration of his confinement and may seek release or a shorter period of confinement. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1037 n.2 (10th Cir. 2012). However, claims challenging a prisoner's conditions of confinement do not arise under § 2241. *See McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811–12 (10th Cir. 1997) (contrasting suits under Section 2241 and conditions of confinement claims).

Petitioner may not bring his retaliation and other conditions of confinement claims[5] in a habeas corpus action; rather, he must proceed, if at all, in a civil rights action filed pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). *See*

---

[5] The Court notes that Petitioner includes one sentence stating that "Petitioner is being denied and hindered to access to the law library." (Doc. 3, at 7.) Any claim regarding denial of access to the courts would also be based on his conditions of confinement and must be brought in a *Bivens* civil rights action.

*Requena v. Roberts*, 552 F. App'x. 853 (10th Cir. April 7, 2014). The Court finds that these claims are not properly before the Court. Accordingly, the Court denies Petitioner's motion for the production of documents relating to his retaliation claim.

**5, Petitioner's Supplement**

On May 12, 2017, Petitioner filed his Supplemental Argument to Motion to Dismiss (Doc. 18). Petitioner's Supplement states that USPL has failed to provide him with copies of his medical records despite his requests. Petitioner alleges that he will need his medical records, as well as his "birth certificate, etc." as he prepares for his release from the RRC. Petitioner mailed his Supplement to the Court for filing on May 9, 2017. The Supplement includes as an attachment Petitioner's request for his medical records dated the previous day—May 8, 2017. (Doc. 18, at 3–5.) Petitioner's Supplement does not suggest that he has sought administrative remedies for his claims, nor does he present a due process or other constitutional claim that can be remedied in this § 2241 action.

**IT IS THEREFORE ORDERED BY THE COURT** that Respondents' Motion to Dismiss (Doc. 11) is **granted**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Produce Documents (Doc. 14) is **denied**.

**IT IS FURTHER ORDERED** that the Petition for writ of habeas corpus is **dismissed without prejudice**.

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas, on this 16th day of May, 2017.**

s/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
